# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| G. GEERLINGS EXPORT B.V., | |
| Plaintiff, | CIVIL ACTION NO. 3:15-CV-1292 |
| v. | (JUDGE CAPUTO) |
| VAN HOEKELEN GREENHOUSES, INC., | |
| Defendant. | |

## **MEMORANDUM**

Presently before the Court is a Motion for Partial Summary Judgment (Doc. 15) and a Motion to Dismiss the Amended Answer's Counterclaim (Doc. 22) filed by Plaintiff G. Geerlings Export B.V. ("Geerlings"). In its Complaint (Doc. 1), Geerlings seeks recognition of a foreign judgment in its favor under Pennsylvania's Uniform Foreign Money Judgment Recognition Act (the "Recognition Act" or "Act"). Defendant, Van Hoekelen Greenhouses, Inc. ("VHG"), filed an Amended Answer (Doc. 12) asserting various affirmative defenses to recognition of the foreign judgment and a counterclaim for fraud. Because Geerlings has established a *prima facie* case for recognition, and because VHG has failed to demonstrate that a defense to recognition applies or show how its proposed discovery would otherwise preclude summary judgment, the Court will grant Geerlings's Motion for Partial Summary Judgment and recognize the foreign judgment. Additionally, because VHG had ample opportunity to raise its claim for fraud before the Dutch courts, its counterclaim fails to state a claim as a matter of law. Geerlings's Motion to Dismiss will therefore be granted.

## I. Relevant Factual Background

The facts presented in the summary judgment record, viewed in the light most favorable to Defendant, are as follows:

Plaintiff Geerlings is a flower bulb grower based in The Netherlands. (Def.'s Counterstatement of Material Facts ("DCMF") at 6, ¶ 1, Doc. 29; Pl.'s Statement of Material

Facts ("PSMF") Ex. 2 ("Appeal Judgment") at 1, Doc. 16-2.) Geerlings has done business with Defendant VHG since 1988. (DCMF at 1, ¶ 3.) VHG is a family business that grows and distributes flower bulbs from its location in McAdoo, Pennsylvania. (*Id.* at 1, ¶ 2.) In 2002, VHG purchased bulbs from Geerlings for delivery to Walmart in the United States. (*Id.* at 2, ¶ 4.) However, the bulbs delivered by Geerlings to VHG contained inaccurate barcodes, which resulted in Walmart refusing to pay VHG for the order and VHG losing all of Walmart's dry bulb business (the "Walmart Barcode Dispute"). (*Id.* at 2, ¶¶ 5-8.) VHG made partial payment to Geerlings with respect to the Walmart bulbs, but did not pay the invoices in full because VHG believed that either Geerlings or Geerlings's printer was responsible for the incorrect barcode. (*Id.* at 2, ¶ 9; PSMF ¶ 4, Doc. 16; Am. Answer ¶ 70, Doc. 12.) Because VHG did not pay Geerlings's invoices in full, Geerlings decided to sue VHG for full payment on its invoices plus interest and costs. (DCMF at 2, ¶ 10; PSMF ¶ 6.)

On January 8, 2008, Geerlings initiated a civil action against VHG in the Court of First Instance in The Hague, The Netherlands, by filing a "dagvaarding.[1]" (DCMF at 2, ¶ 10; PSMF ¶ 5; Pl.'s Mot. for Partial Summ. J., Nabben Decl. ¶ 2, Doc. 15-1.) Geerlings claimed the principal balance that it was owed by VHG was 336,737.38 EURO. (DCMF at 3, ¶ 12; PSMF ¶ 7.) In support of this claim, Geerlings attached a spreadsheet to its complaint that listed the relevant invoice history between the parties and purported to show the principal balance that VHG owed Geerlings. (*See* Am. Answer Ex. B.) VHG filed a counterclaim against Geerlings seeking damages arising out of the Walmart Barcode Dispute. (DCMF at 6-7, ¶¶ 8-9; Am. Answer ¶ 15.) At trial before the Court of First Instance in 2009, VHG was in possession of two documents that are at the center of the present dispute (*see* DCMF at 7, ¶ 14): (1) the aforementioned spreadsheet that Geerlings attached to its Dutch complaint purporting to show the total amount of principal owed by VHG to be 336,737.38 EURO (the "principal balance spreadsheet" or "spreadsheet") (Am. Answer Ex. B.); and (2) a letter from

---

[1] A "dagvaarding" is the initiating summons for a Dutch lawsuit. (Nabben Decl. ¶ 2, Doc. 15-1.)

2

Geerlings to VHG dated September 17, 2002, which purports to confirm that VHG had made payment on eleven invoices[2] related to Walmart orders (the "2002 letter") (*id.* Ex. A.). Both VHG's president and secretary/treasurer were present at the "comparitie van partijen" proceeding before the Court of First Instance, during which they made declarations and answered questions to provide the court with information. (DCMF at 7, ¶ 13.) Geerlings and VHG presented evidence in the Court of First Instance. (*Id.* at 7, ¶ 12.) The Court of First Instance issued a judgment in favor of Geerlings, finding VHG responsible for the incorrect barcodes. (Am. Answer ¶ 74.) The Dutch trial court concluded that the principal VHG owes on Geerlings's invoices is 336,737.38 EURO. (DCMF at 8, ¶ 16; Am. Answer ¶ 74.) The court rejected VHG's counterclaim. (*See* Appeals Judgment ¶ 32; Nabben Decl. ¶ 8.)

On or about August 13, 2010, VHG filed an appeal with the Court of Appeal in The Hague, The Netherlands. (DCMF at 8, ¶ 17.) The Court of Appeal issued a judgment on December 24, 2013 (the "Appeal Judgment[3]"), which affirmed the finding of the Court of First Instance that the principal owed by VHG is 336,737.38 EURO. (*Id.* at 8-9, ¶¶ 18, 21.) The Appeal Judgment directs VHG to pay Geerlings 475,976.18 EURO plus statutory interest on 459,641.18 EURO from January 1, 2008 until the day of final settlement.[4] (*Id.* at 9, ¶¶ 22-23;

---

[2] VHG's Amended Answer claims that only ten of the eleven invoices listed in the 2002 letter were wrongfully included in the principal balance spreadsheet attached to Geerlings's Dutch complaint. (Am. Answer ¶ 81.)

[3] The parties agree that an authentic copy of the translation of the Appeal Judgment from Dutch to English, sworn to and certified by a translator, recorded by the court registrar of the Court of First Instance on July 14, 2014, and authenticated by Apostille is attached as Exhibit 2 to the Complaint. (DCMF at 8, ¶ 20; PSMF ¶ 20.)

[4] The Appeal Judgment awarded Geerlings 459, 641.18 EURO, which includes the original judgment issued by the Court of First Instance for 336,737.38 EURO as well as pre- and post-judgment interest. (Am. Answer ¶ 75.) The Court of Appeal ordered this sum to be increased with statutory interest from January 1, 2008 until final settlement is reached. (DCMF at 9, ¶¶ 22-23.) The Appeal Judgment also requires VHG to pay 4650.00 EURO in court fees and 11,685.00 EURO in attorney's fees. (*Id.* at 9, ¶ 23.)

*see also* Pl.'s Mot. for Partial Summ. J., Nabben Expert Decl. ¶¶ 12-13, Doc. 15-2.) VHG denies that the amount of principal it owes on Geerlings's invoices was ever litigated or disputed before the Court of First Instance. (*Compare* DCMF at 7, ¶¶ 10-11, *with* PSMF ¶¶ 10-11.) However, the record indicates that the Dutch courts did consider the amount of money VHG owed to Geerlings. (*See, e.g.*, Appeal Judgment 4, ¶ 16 ("This shows that the balance was not zero and that apart from the outstanding amount [as of May 15, 2003] (EUR 163,311.58) there were still invoices unpaid [as] of 2002, so that the overall debt in September 2004 (as regards the payments made by [VHG] up to [May 15, 2003]) amounted to EUR 305,189.39."); *id.* at 5, ¶ 16 (referring to the "Walmart balance" and finding Geerlings's position to be "correct"). VHG does not cite to any record evidence supporting its position that this issue was not raised in the Dutch actions. (*See* DCMF Ex. 1, Van Hoekelen Decl. ¶¶ 11-15, Doc. 29-1 (claiming discrepancies in payments made to Geerlings and the judgment amount affirmed by the Court of Appeal, but silent on whether the amount of principal VHG owes Geerlings was raised in the Dutch litigation).) Both parties were represented by counsel in the Court of First Instance and in the Court of Appeal. (DCMF at 9, ¶ 24; Appeal Judgment at 1.)

The Court of Appeal transmitted its judgment to VHG's attorney on or about December 24, 2013. (DCMF at 10, ¶ 29.) On the advice of its counsel, VHG did not attempt to appeal the Appeal Judgment to the Supreme Court of The Netherlands. (*Id.* at 10, ¶ 30; *see also* Nabben Expert Decl. ¶ 16.) The parties dispute whether VHG had the right to bring such an appeal. (*Compare* DCMF at 10, ¶ 30, *and id.* Ex. 2, Duijsens Decl. ¶ 9, Doc. 29-2, *with* PSMF ¶ 30, *and id.* Nabben Expert Decl. ¶ 15.) On April 30, 2015, the bailiff transmitted the judgment of the Court of Appeal to VHG at its McAdoo, Pennsylvania office. (DCMF at 10, ¶ 31.) Geerlings subsequently made a written demand to VHG for payment of the judgment, but VHG has not paid the judgment in full or in part. (*Id.* at 10-11, ¶¶ 32-33.)

VHG refuses to satisfy the Appeal Judgment because it believes the award might amount to a double recovery for Geerlings (*see* Def.'s Br. in Opp'n 2, 10, 12, Doc. 28), which VHG claims constitutes a fraud and contravenes Pennsylvania public policy. (*See* Am.

4

Answer ¶ 62; Def.'s Br. in Opp'n 11-12.) Specifically, VHG argues that the principal balance spreadsheet Geerlings submitted with its Dutch complaint included ostensibly outstanding invoices that VHG had actually paid. (Def.'s Br. in Opp'n 4-6.) VHG contends the Appeal Judgment therefore amounts to a double recovery because the Dutch courts' award calculations included invoices that were not in fact outstanding. (*Id.* at 11-12.) In support of this position, VHG points to a portion of the Court of Appeal's decision which recognizes that the Court of First Instance held that VHG made "unspecified payments" that could be used "to settle outstanding debts dating from before [January 8, 2003] . . . ." (Appeal Judgment ¶ 13; *see* DCMF at 3, ¶ 14.) Additionally, VHG proffers various communications between the parties that allegedly show that invoices included in the principal balance spreadsheet had already been satisfied and that the spreadsheet failed to properly account for certain payments. (DCMF at 4, ¶ 18.) Specifically, VHG points to: (a) the 2002 letter, which indicates VHG made a payment of 411,658.29 EURO that covered eleven outstanding invoices related to Walmart orders and left VHG with an account credit of 3,135.31 EURO. VHG contends this letter reveals that, in the Dutch litigation, Geerlings sought 41,833.32 EURO in damages on invoices that VHG had satisfied in full, and that the spreadsheet failed to account for the 3,135.31 EURO credit it was due (*id.* at 4, ¶ 18(B)); (b) a letter from Geerlings dated June 7, 2004 that purports to show that VHG made a payment on a particular invoice that is not accurately represented in the principal balance spreadsheet (*id.* at 4, ¶ 18(A)); and (c) a letter from Geerlings dated July 15, 2003 that indicates Geerlings provided VHG with a credit in the amount of $37,719.04 (38,839.04 EURO) relating to freight costs on the Walmart bulbs that is not accounted for in the spreadsheet (*id.* at 4, ¶ 18(C)). VHG requests discovery on how much of the Appeal Judgment award it has already paid Geerlings via these "unspecified payments" so that the award can be modified downward accordingly. (DCMF at 3-4, ¶¶ 16-17; *id.* at 11, ¶ 33.)

On June 30, 2015, Geerlings filed the instant Complaint with this Court, seeking recognition of the Appeal Judgment pursuant to 42 Pa. Cons. Stat. §§ 22001-22009 (1990). (Compl. ¶ 1; *id.* Count I, Doc. 1.) Jurisdiction is appropriate under 28 U.S.C. § 1332. VHG

filed its Amended Answer on November 2, 2015, asserting various affirmative defenses and a counterclaim for fraud. (Am. Answer ¶¶ 47-61, 62.) Geerlings moved for summary judgment on Count I of its Complaint on November 23, 2015, requesting recognition of the Appeal Judgment. (Doc. 15.) On December 18, 2015, Geerlings filed a Motion to Dismiss VHG's counterclaim for failure to state a claim upon which relief can be granted. (Doc. 22.) VHG filed its Brief in Opposition (Doc. 28) to Geerlings's Motion for Partial Summary Judgement on January 18, 2016, and did not file a response to Geerlings's Motion to Dismiss its counterclaim. Geerlings filed its Reply Brief (Doc. 32) on February 4, 2016. Both Motions are now ripe for review.

## II. Legal Standard

### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 247-48. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Where there is a material fact in dispute, the moving party

has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When considering whether there are genuine issues of material fact, the court is required to "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In order to prevail on a motion for summary judgment, the non-moving party must show "specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). Although the non-moving party's evidence may be either direct or circumstantial, and "need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**B.     Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail.  *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts:  (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face,"

*Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).v"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**C.     The Pennsylvania Uniform Foreign Money Judgment Recognition Act**

Under the Pennsylvania Uniform Foreign Money Judgment Recognition Act, 42 Pa. Cons. Stat. §§ 22001-22009 (1990), "a judgment by a foreign court granting a sum of money is enforceable in Pennsylvania 'in the same manner as the judgment of another state which is entitled to full faith and credit,' provided the judgment is 'final and conclusive and enforceable where rendered. . . .'" *Soc'y of Lloyd's v. Mullin*, 255 F. Supp. 2d 468, 472 (E.D. Pa. 2003), *aff'd*, 96 Fed. Appx. 100 (3d Cir. 2004) (quoting 42 Pa. Cons. Stat. §§ 22003, 22009). The Pennsylvania legislature's adoption of the Recognition Act "clarified several aspects of the State's foreign judgment jurisprudence: (1) a foreign judgment is entitled to recognition if it is final, conclusive, and enforceable where rendered, (2) unless the

defendant, bearing the burden of proof, (3) can establish one of several grounds for nonrecognition." *Clientron Corp. v. Devon IT, Inc.*, 35 F. Supp. 3d 665, 678-79 (E.D. Pa. 2014) (internal citations omitted). If the moving party establishes a *prima facie* case for recognition, the grounds for nonrecognition enumerated in the Act are the only defenses available to the nonmoving party. *Id.* at 679.

A party makes out a *prima facie* case for recognition of a foreign judgment award if it demonstrates that the award: "(1) qualifies as a foreign judgment; (2) is for a sum of money; (3) is final and conclusive; and (4) is enforceable where it was rendered." *Id.* at 680. The nonmoving party then bears the burden of proving one of the statutory grounds for nonrecognition. *Id.* (citing *Third Nat'l Bank of Nashville v. Tagnani*, 18 Pa. D. & C.4th 92, 94, 1993 WL 669016, at *2 (Pa. Ct. Com. Pleas Feb. 4, 1993)). When presented with a claim for recognition under the Act, a court's "analysis is limited to the issues presented by the text of the statute." *Mullin*, 255 F. Supp. 2d at 473. A district court is not the appropriate forum for relitigating issues determined in the foreign action. *See id.*; *Novae Corp. Underwriting Ltd. v. Atlantic Mut. Ins. Co.*, 556 F. Supp. 2d 489, 495 (E.D. Pa. 2008).

## II. Discussion

There is no dispute as to whether the Appeal Judgment qualifies as a foreign judgment, is for a sum of money, or is final, conclusive, and enforceable where rendered. The record makes clear that Geerlings has established a *prima facie* case for recognition, and VHG does not genuinely contest this fact. (*See* DCMF ¶ 20; Nabben Expert Decl. ¶¶ 18-20 (establishing that the Appeal Judgment is self-authenticating and is a foreign judgment for a sum of money that is final, conclusive, and enforceable under The Netherlands's laws).) As such, the Court should recognize the Appeal Judgment unless an exception listed in the Recognition Act applies. VHG opposes Geerlings's Motion for Partial Summary Judgment on three primary grounds. First, VHG contends that recognizing the Appeal Judgment in full would be repugnant to Pennsylvania public policy. (Def.'s Br. in Opp'n 11-12); *see* 42 Pa. Cons. Stat. § 22004(3). Second, VHG alleges that the judgment should not be recognized because it was obtained by fraud. (*See* Am. Answer ¶¶ 62, 85-87); § 22004(2). Lastly, VHG

argues that summary judgment is premature because the parties have not been able to engage in discovery. (Def.'s Br. in Opp'n 8-10.) VHG also asserts a claim against Geerlings for fraud. (Am. Answer ¶ 62.)

For the reasons detailed below, Geerlings's Motion for Partial Summary Judgment will be granted because it has made a *prima facie* showing that the judgment affirmed by the Court of Appeal should be recognized under the Recognition Act, and VHG has failed to carry its burden to show that a statutory exception to recognition applies. Additionally, Geerlings's Motion to Dismiss VHG's counterclaim will also be granted because VHG fails to state a claim for fraud.

**A. The Appeal Judgment Is Not Repugnant to Pennsylvania Public Policy**

VHG attempts to defend against Geerlings's *prima facie* case by arguing that recognition of the full Appeal Judgment might permit Geerlings to recover more in damages for breach of contract than the losses it sustained, in contravention of Pennsylvania public policy. (Def.'s Br. in Opp'n 11); *see* 42 Pa. Cons. Stat. § 22004(3). In support of its position, VHG cites to communications with Geerlings that allegedly reveal inaccuracies in the principal balance spreadsheet that formed the basis for the amount of the award in the Appeal Judgment. (DCMF at 4, ¶ 18.) Geerlings contends that VHG's argument impermissibly attempts to relitigate an issue already decided by the Dutch courts–namely, the amount of principal VHG owes on the invoices. (Pl.'s Br. in Reply 5-8, Doc. 32.) The Court notes that VHG did not raise the repugnant-to-public-policy exception as an affirmative defense to recognition in its Amended Answer. Generally, if an affirmative defense is not pleaded it is waived. *See Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991). But even if VHG re-amended its Answer to include this defense, the Court concludes that it has not demonstrated that recognition of the Appeal Judgment would be repugnant to public policy.

Prior to adoption of the Recognition Act, Pennsylvania common law already set an exceptionally high bar for establishing the repugnancy exception to recognition of a foreign judgment. As noted by the Third Circuit, in order to establish that a foreign judgment violates Pennsylvania public policy, the defendant must show that the cause of action or claim for

relief "tends clearly to injure the public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel, is against public policy." *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 443 (3d Cir. 1971) (quoting *Goodyear v. Brown*, 26 A. 665, 666 (Pa. 1893)). The adoption of the Recognition Act codified the common law principles related to recognition of foreign judgments, including the principles of comity. *See Soc'y of Lloyd's v. Mullin*, 255 F. Supp. 2d 468, 475 (E.D. Pa. 2003), *aff'd*, 96 Fed. Appx. 100 (3d Cir. 2004) (citing Jay M. Zitter, Annotation, *Construction and Application of Uniform Money Judgments Recognition Act*, 2001 WL 487102, 88 A.L.R.5th 545 (2001)); *see also id.* ("Withholding comity on public policy grounds . . . should only occur 'in the clearest cases.'") (quoting *Somportex Ltd.*, 453 F.2d at 443 n.15)).

The language of the Recognition Act further narrows the repugnancy exception by limiting the Court's inquiry to whether the "cause of action" or "claim for relief" is so repugnant to public policy that it warrants nonrecognition.[5] *See Mullin*, 255 F. Supp. 2d at 476 (quoting 42 Pa. Cons. Stat. § 22004(3)); *see also Olympus Corp. v. Canady*, No. 3036, 2007 WL 5479475, at *1 (Pa. Ct. Com. Pleas Aug. 8, 2014) ("Pennsylvania's courts must accord even greater deference to foreign judgments under the Recognition Act than it did under the principle of comity. . . [because] the Act limited the grounds on which a court may strike an award."). Limited to this narrow inquiry, courts interpreting the Recognition Act have specifically concluded that neither a cause of action for breach of contract nor a claim for monetary relief is repugnant to Pennsylvania public policy. *See Mullin*, 255 F. Supp. 2d at 476 ("There is no support for any contention that a cause of action for breach of contract is

---

[5] The language of the repugnancy exception reads: "A foreign judgment need not be recognized if . . . the cause of action or claim for relief on which the judgment is based is repugnant to the public policy of this Commonwealth." 42 Pa. Cons. Stat. § 22004(3).

repugnant to Pennsylvania public policy. . . . Nor is there any support for a contention that the claim for relief sought here, an award of money damages, is repugnant to Pennsylvania public policy."), *aff'd*, 96 Fed. Appx. 100, 103 (3d Cir. 2004) ("Because a cause of action for breach of contract is certainly not repugnant to Pennsylvania public policy, we reject [appellant's] argument for non-recognition of the English judgment."); *see also Soc'y of Lloyd's v. Siemon-Netto*, No. 03-1524(JR), 2004 WL 5580208, at *2 (D.D.C. Aug. 20, 2004) (noting that the "operative question" is "whether the *cause of action on which the judgment is based* is repugnant to public policy") (emphasis in original) (citations omitted).

Geerlings pursued a cause of action for breach of contract in the Dutch courts and sought money damages from VHG. (*See* DCMF at 6, ¶¶ 5-7; Appeal Judgment ¶ 4.) Neither the cause of action nor the relief sought violate Pennsylvania public policy. *See Mullin*, 255 F. Supp. 2d at 476. And although VHG now claims the Appeal Judgment might over-compensate Geerlings for the losses it sustained due to VHG's breach, such a concern does not rise to the level of repugnancy necessary to deny recognition based on public policy grounds. *See Somportex Ltd.*, 453 F.2d at 443 (recognizing foreign judgment when substantial portion of compensatory damages in breach of contract action was for the loss of goodwill and attorney's fees, despite the fact that Pennsylvania law did not permit recovery on those grounds). The Court will not deny recognition of the Appeal Judgment based on VHG's public policy defense.

**B. The Appeal Judgment Was Not Obtained by Fraud**

In its Amended Answer, VHG asserts a counterclaim for fraud but does not raise fraud as an affirmative defense. (Doc. 12.) The Court generously construes the facts averred in the Amended Answer to also assert an affirmative defense based on fraud pursuant to 42 Pa. Cons. Stat. § 22004(2)[6]. *See* FED. R. CIV. P. 8(c)(2). VHG argues primarily that the principal balance spreadsheet Geerlings submitted to the Dutch courts included a knowingly

---

[6]   The language of the fraud exception reads: "A foreign judgment need not be recognized if . . . the judgment was obtained by fraud." 42 Pa. Cons. Stat. § 22004(2).

false demand for payment on invoices totaling 41,833.32 EURO that the 2002 letter confirmed were paid in full. (DCMF at 4, ¶ 18(B); Am. Answer ¶ 62.) Geerlings contends that the fraud exception to recognition cannot apply in this case because the exception does not apply to issues that could have been or were litigated in the foreign court. (Pl.'s Br. in Supp. 7, Doc. 17.) The Court concludes that VHG has failed to carry its burden of proving this ground for nonrecognition.

In order to invoke the fraud exception to recognition of a foreign judgment, the defendant must demonstrate that the fraud "relate[d] to matters *other than issues that could have been litigated* and must be a fraud on the court." *Mullin*, 255 F. Supp. 2d at 473 (emphasis added) (quoting *Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals) Co., Ltd.*, 470 F. Supp. 610, 615 (S.D.N.Y. 1979) (construing the "obtained by fraud" exception to New York's Recognition Act, which is identical to Pennsylvania's Recognition Act)). That is, "only extrinsic, as opposed to intrinsic, fraud will bar the recognition of a foreign judgment." *de la Mata v. Am. Life Ins. Co.*, 771 F. Supp. 1375, 1388 (D. Del. 1991). Whereas intrinsic fraud concerns "issues which were litigated in the prior proceeding," such as the authenticity of documents, extrinsic fraud "relates to matters other than those that were litigated" in the foreign court, such as a plaintiff withholding material evidence favorable to the defendant in the foreign action. *See id.* at 1388-89; *see also* RONALD A. BRAND, FED. JUDICIAL CTR., RECOGNITION AND ENFORCEMENT OF FOREIGN JUDGMENTS 21 (2012). The extrinsic fraud must have "prevented a fair submission of the controversy" in order for a judgment to be disturbed. *See McGary v. Lewis*, 119 A.2d 497, 501 (Pa. 1956).

Even assuming the issue of the amount of principal VHG owed Geerlings was not litigated in the Dutch actions, as VHG suggests[7], there is no question that VHG *could* have challenged the accuracy of the spreadsheet during the foreign court proceedings. Geerlings attached the principal balance spreadsheet to its complaint filed with the Court of First

---

[7] VHG's denial fails to cite to record evidence supporting this position. (*See* DCMF at 7, ¶¶ 10-11 (citing Van Hoekelen Decl. ¶¶ 11-15 (failing to refute the assertion that the amount of principal owed was raised in the Dutch litigation)).)

Instance, which listed 336,737.38 EURO as the principal amount owed. (DCMF at 2-3, ¶¶ 11-12.) Both the Court of First Instance and the Court of Appeal concluded that the principal VHG owes on the invoices is 336,737.38 EURO, the amount specified in the spreadsheet. (*Id.* at 6, ¶ 7, at 8, ¶ 16, at 9, ¶ 21.) VHG admits that it was in possession of both the principal balance spreadsheet and the 2002 letter at the time of trial before the Court of First Instance. (DCMF at 7, ¶ 14.) Clearly, VHG was aware that Geerlings had presented the Court of First Instance with the principal balance spreadsheet listing 336,737.38 EURO as the outstanding amount, and that the Dutch trial court based its damages calculations on that spreadsheet. VHG had the opportunity to contest the precision of the damages calculations, including the trial court's reference to "unspecified payments" that could be used to settle certain debts, before the Court of Appeal. If VHG failed to do so, it may not avail itself now of the fraud defense. Intrinsic fraud does not bar recognition of an otherwise valid foreign judgment, and any issue with the accuracy of the principal balance spreadsheet would constitute intrinsic fraud. VHG has not submitted any facts that demonstrate it was prevented from presenting "a fair submission of the controversy" before the Dutch courts. *McGary*, 119 A.2d at 501. And none of VHG's proposed discovery would support a defense based on extrinsic fraud. (*Cf.* Def.'s Br. in Opp'n Ex. A, McConnell Decl., Doc. 28-1.) Accordingly, the Court will not deny recognition of the Appeal Judgment based on VHG's fraud defense.

**C. Geerlings's Motion for Partial Summary Judgment Is Not Premature**

VHG contends that Geerlings's Motion for Partial Summary Judgment is premature and argues that under Federal Rule of Civil Procedure 56(d)[8] the Court should deny or defer its ruling on this Motion until VHG has the opportunity to engage in the discovery it seeks. (Def.'s Br. in Opp'n 8-10.) Geerlings asserts that VHG is not entitled to discovery because

---

[8] Rule 56(d) states: If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
    (1) defer considering the motion or deny it;
    (2) allow time to obtain affidavits or declarations or to take discovery; or
    (3) issue any other appropriate order.

the proposed discovery does not bear on either Geerlings's *prima facie* case for recognition or any defense to recognition cognizable under the Act. (Pl.'s Br. in Reply 11.) Additionally, Geerlings argues that summary judgment is often appropriate in the early stages of litigation involving recognition of a foreign judgment. (Pl.'s Br. in Supp. 4.) The Court will deny VHG's request for a deferred ruling on Geerlings's Motion for Partial Summary Judgment because VHG does not show how the discovery it requests would preclude summary judgment.

The Third Circuit has interpreted Rule 56(d) to "to require 'a party seeking further discovery in response to a summary judgment motion [to] submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'" *Pa. Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir. 2012) (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 139-40 (3d Cir. 1988)). VHG submitted a declaration from its attorney that specifies the discovery it seeks. ( McConnell Decl.) The McConnell Declaration requests discovery on how Geerlings has accounted for VHG's prior payments, and seeks to depose Geerlings's Dutch counsel and the employees responsible for creating the principal balance spreadsheet. (McConnell Decl. ¶¶ 7-9.) However, the Declaration does not specify how the proposed discovery would preclude summary judgment, and the Court does not independently see how this information would rebut Geerlings's *prima facie* case. *See Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, No. 14-5409-RJB, 2014 WL 5605058, at *6 (W.D. Wash. Nov. 4, 2014) (denying defendant's Rule 56(d) motion because it failed to demonstrate how the requested discovery would preclude summary judgment). Nothing requested in the McConnell Declaration would contradict an element of Geerlings's *prima facie* case or support an affirmative defense raised by VHG that is cognizable under the Recognition Act. Because the proposed discovery would serve only to relitigate an issue that was or could have been raised in the Dutch courts, the Court will not delay ruling on Geerlings's Motion for Partial Summary Judgment based on this ground.

**D. VHG's Remaining Affirmative Defenses Do Not Bar Recognition**

VHG's Amended Answer raises fourteen affirmative defenses, only a few of which are

cognizable under the Recognition Act. *See Clientron Corp. v. Devon IT, Inc.*, 35 F. Supp. 3d 665, 679 (E.D. Pa. 2014) ("[T]he defenses available to oppose recognition are limited to those enumerated in [the Act]."); *see also Soc'y of Lloyd's v. Hamilton*, 501 F. Supp. 2d 248, 252 (D. Mass. 2007). In addition to the affirmative defenses addressed above, VHG also claims that recognition is barred because the Appeal Judgment was based on issues beyond the scope of an unspecified agreement between the parties, (Am. Answer ¶ 49); *see* 42 Pa. Cons. Stat. § 22004(5), and because the Dutch courts lacked jurisdiction over the dispute. (Am. Answer ¶ 50); *see* § 22005(3). Both of these defenses fail.

VHG has proffered no evidence in support of its defense that an agreement between the parties to resolve disputes in a different forum precludes recognition. Moreover, VHG admits that it never raised this issue before the Dutch courts. (DCMF ¶ 28.); *see Dart v. Balaam*, 953 S.W.2d 478, 482 (Tex. Ct. App. 1997) (finding that appellant waived his right to assert this ground for nonrecognition by litigating in the foreign court and not raising this defense). The Court will not deny recognition based on this defense.

VHG also has not shown that subject matter jurisdiction was lacking. The only record evidence concerning jurisdiction is a Declaration by Peter Duijsens, the attorney who represented VHG before the Court of First Instance, who attests that VHG disputed jurisdiction at trial. (Duijsens Decl. ¶ 3.) There mere fact that VHG disputed jurisdiction in the foreign action does not demonstrate that the foreign court lacked subject matter jurisdiction. *Cf. Hunt v. BP Expl. Co. (Libya) Ltd.*, 492 F. Supp. 885, 898 (N.D. Tex. 1980) (noting that a recognizing court may reexamine whether a foreign court had subject matter jurisdiction, but finding the party failed to raise a meritorious claim), *abrogated on other grounds by Success Motivation Inst. of Japan Ltd. v. Success Motivation Inst., Inc.*, 966 F.2d 1007 (5th Cir. 1992). It is generally presumed that foreign courts have subject matter jurisdiction over the disputes they adjudicate. RESTATEMENT (THIRD) FOREIGN RELATIONS LAW § 482 cmt. a ("[J]urisdiction of the rendering court over the subject matter is normally presumed, and an inquiry into possible lack of competence is initiated only on the basis of a credible challenge by the judgment debtor."); *id.* cmt. d. VHG has not raised a credible challenge to the

jurisdiction of the Dutch courts over the subject matter jurisdiction of the dispute. Accordingly, the Court will not deny recognition based on this affirmative defense.

Therefore, because Geerlings has established a *prima facie* case for recognition, and because VHG has failed to demonstrate that a defense to recognition applies or show how its proposed discovery would otherwise preclude summary judgment, the Court will grant Geerlings's Motion for Partial Summary Judgment and recognize the Appeal Judgment.

**E. Geerlings's Motion to Dismiss VHG's Counterclaim Will Be Granted**

In its Amended Answer, VHG asserts a counterclaim against Geerlings for fraud. (Am. Answer ¶ 62.) Like its affirmative defense, VHG's claim is based on the allegation that Geerlings submitted the principal balance spreadsheet to the Dutch courts in an intentional effort to recover payment on invoices that had already been satisfied, totaling 41,833.32 EURO in over-compensation. (*Id.* ¶¶ 84, 90.) But VHG's independent claim for fraud must also fail as a matter of law because it had the "opportunity to have the ground now relied upon to set aside the judgment fully litigated in the original action." *Leber-Krebs, Inc. v. Capitol Records*, 779 F.2d 895, 899 (2d Cir. 1985) (quoting *M.W. Zack Metal v. Int'l Navigation Corp. of Monrovia*, 675 F.2d 525, 529 (2d Cir.), *cert. denied*, 459 U.S. 1037 (1982)). "Independent actions are thus barred where plaintiff had ample opportunity to or, in fact, did raise the alleged fraud in the underlying action." *Duse v. IBM Corp.*, 212 F.R.D. 58, 62 (D. Conn. 2002) (citing *M.W. Zack Metal*, 675 F.2d at 529)). VHG had ample opportunity to claim that the principal balance spreadsheet contained fraudulent inputs or failed to accurately reflect the outstanding invoices before the Dutch courts. (*See* DCMF at 7, ¶ 14 (admitting VHG had possession of the spreadsheet and 2002 letter at time of trial); *id.* at 7, ¶¶ 10-11 (failing to refute the fact that the amount of principal owed was raised and disputed at trial).) As a matter of law, VHG has failed to state an independent claim for fraud. Geerlings's Motion to Dismiss the Amended Answer's Counterclaim will be granted.

### III. Conclusion

For the above stated reasons, Plaintiff's Motion for Partial Summary Judgment will be GRANTED, and the Court will recognize the Appeal Judgment pursuant to the Recognition Act. Additionally, Plaintiff's Motion to Dismiss the Amended Answer's Counterclaim will be GRANTED.

An appropriate order follows.

October 14, 2016                                          /s/ A. Richard Caputo
Date                                                       A. Richard Caputo
                                                                United States District Judge