**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

G. GEERLINGS EXPORT B.V.,

     Plaintiff,

         v.

VAN HOEKELEN GREENHOUSES, INC.,

     Defendant.

CIVIL ACTION NO. 3:15-CV-1292

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is a Motion filed by Plaintiff G. Geerlings Export B.V. ("Geerlings"), requesting the Court to enter judgment for $873,182.58, plus $45.65 for each day from December 7, 2016 to December 31, 2016, along with post-judgment interest and costs. (Doc. 44.) This Court previously granted Geerlings's Motion for Partial Summary Judgment and recognized a foreign judgment issued in favor of Geerlings. (Docs. 42 & 43.) The Court's prior Order did not enter judgment for a sum certain and did not consider post-judgment interest or costs. For the reasons that follow, Geerlings's Motion will be granted in part and denied in part as detailed below and in the accompanying Order.

### I. Relevant Background

Because the factual and procedural history are both well known to the parties and stated in the Court's prior Memorandum in *G. Geerlings Export B.V. v. Van Hoekelen Greenhouses, Inc.*, No. 3:15-CV-1292, 2016 WL 6834033 (M.D. Pa. Nov. 21, 2016), they need not be repeated here other than to note the following:

In 2002, Defendant Van Hoekelen Greenhouses, Inc. ("VHG") purchased bulbs from Geerlings for delivery to Walmart in the United States. (Mem. 2, Doc. 42.) However, the bulbs delivered by Geerlings to VHG contained inaccurate barcodes, which resulted in Walmart refusing to pay VHG for the order and VHG losing all of Walmart's dry bulb business. (*Id.*) VHG made partial payment to Geerlings with respect to the Walmart bulbs,

but did not pay the invoices in full because VHG believed that either Geerlings or Geerlings's printer was responsible for the incorrect barcode. (*Id.*)

On January 8, 2008, Geerlings initiated a civil action against VHG in the Court of First Instance in The Hague, The Netherlands, seeking full payment on its invoices plus interest and costs. (*Id.*) The Court of First Instance issued a judgment in favor of Geerlings, finding VHG responsible for the incorrect barcodes. (*Id.* at 3.) The Dutch trial court concluded that the principal VHG owes on Geerlings's invoices is 336,737.38 EURO. (*Id.*) On or about August 13, 2010, VHG filed an appeal with the Court of Appeal in The Hague, The Netherlands. (*Id.*) The Court of Appeal issued a judgment on December 24, 2013 (the "Appeal Judgment"), which affirmed the finding of the Court of First Instance that the principal owed by VHG is 336,737.38 EURO. (*Id.*) The Appeal Judgment directs VHG to pay Geerlings 475,976.18 EURO plus statutory interest on 459,641.18 EURO from January 1, 2008 until the day of final settlement.[1] (*Id.*) The Court of Appeal transmitted its judgment to VHG's attorney on or about December 24, 2013. (*Id.* at 4.) VHG, however, did not satisfy the Appeal Judgment because it believed the award might overcompensate Geerlings. (*Id.*)

On June 30, 2015, Geerlings filed a one-Count Complaint, requesting the Court to recognize the Dutch Appeal Judgment pursuant to the Pennsylvania Uniform Foreign Money Judgment Recognition Act, 42 Pa. Cons. Stat. §§ 22001-22009 (the "Recognition Act"). (Compl. ¶ 1; *id.* Count I, Doc. 1.) VHG filed an Amended Answer on November 2, 2015, asserting various affirmative defenses and a counterclaim for fraud. (Doc. 12.) On November 23, 2015, Geerlings moved for partial summary judgment on Count I of its Complaint, requesting recognition of the Appeal Judgment. (Doc. 15.) On November 21, 2016, the Court

---

[1]     The Appeal Judgment awarded Geerlings 459, 641.18 EURO, which includes the original judgment issued by the Court of First Instance for 336,737.38 EURO as well as interest. (Am. Answer ¶ 75.) The Court of Appeal also ordered this sum to be increased with statutory interest from January 1, 2008 until final settlement is reached pursuant to Dutch law. (DCMF at 9, ¶¶ 22-23; Nabben Expert Decl. ¶ 6.) The Appeal Judgment also requires VHG to pay 4650.00 EURO in court fees and 11,685.00 EURO in attorney's fees. (DCMF at 9, ¶ 23.)

granted Geerlings's Motion and recognized the Dutch Appeal Judgment dated December 24, 2013. (Order ¶ 1, Doc. 43.) The Court also dismissed VHG's counterclaim. (*Id.* ¶ 2.)[2]

According to VHG, after the Court issued its Order on November 21, 2016, counsel for both parties exchanged emails discussing the Dutch statutory interest calculation. (Br. in Opp'n 5, Doc. 50; Sur-Reply Br. 4-5, Doc. 56-3.) The parties agreed to a calculation on December 6, 2016. (*Id.*) However, a dispute arose as to whether VHG was to pay Geerlings in EURO or in U.S. dollars. (*See* Sur-Reply Br. 4-5.) On the same day, Geerlings filed the instant Motion seeking an entry of judgment in U.S. dollars in an amount equal to the monies due on the Appeal Judgment. (Motion 2, Doc. 44.) Geerlings argues that judgment should be entered in its favor in U.S. dollars using the exchange rate in effect when the Dutch Appeal Judgment issued. (Br. in Supp. 6-13, Doc. 45.) On December 12, 2016, VHG wired Geerlings 638,620.64 EURO, which included 162,644.46 EURO in statutory interest. (Second Van Hoekelen Decl. ¶ 9, Doc. 50-2.) This total reflects the entire amount that was due on the Appeal Judgment in EURO at the time the payment was made. (*See* Nabben Expert Decl. ¶¶ 5-12, Doc. 15-2; Supp. Nabben Expert Decl. ¶¶ 5-6, Doc. 44-2; *see also* Reply Br. 1, Doc. 55.) On December 30, 2016, VHG filed its Brief in Opposition to Geerlings's Motion. (Doc. 50.) In opposing Geerlings's Motion, VHG makes several arguments. First, VHG contends that the instant Motion is moot by virtue of the December 12, 2016 wire payment. Second, if Geerlings's Motion is not moot, VHG argues that the Dutch Appeal Judgment should not be converted into U.S. dollars because situations warranting conversion are not present in this case, and because a conversion would give Geerlings an impermissible windfall. Lastly, if the Court finds that conversion is warranted, VHG posits that the appropriate exchange rate should not be the rate in effect on the date

---

[2]    Contrary to VHG's assertions, the Order did not direct VHG to remit payment to Geerlings "in EURO." Indeed, the Order did not direct VHG to do anything. The Order disposed of Geerlings's Motion for Partial Summary Judgment, which only asked the Court to find that the Appeal Judgment was entitled to recognition. The issue of damages was not raised by either party, and the Court never entered judgment for a sum certain. (Order, Doc. 43.)

the Appeal Judgment issued. Geerlings filed its Reply Brief on February 8, 2017. (Doc. 55.) After obtaining leave of court, VHG filed a Sur-Reply Brief on February 28, 2017. (Docs. 56 & 57.) Geerlings's Motion is ripe for disposition.

## II. Legal Standard

Geerlings entitled the instant Motion as a Motion to Enter Judgment pursuant to Rules 54 and 58 of the Federal Rules of Civil Procedure. (Mot. to Enforce 1.) Presumably, Geerlings is requesting the Court to enter final judgment on its Recognition Act claim pursuant to Rule 54(b). Rule 54(b) states:

> When an action presents more than one claim for relief–whether as a claim, counterclaim, crossclaim, or third-party claim–or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Thus, by its own terms, entry of judgment pursuant to Rule 54(b) "applies only when there are either multiple claims for relief, . . . or when multiple parties are involved." Wright & Miller, Federal Practice and Procedure: Civil § 2657 (3d ed.); *see In re Heritage Bond*, 2004 WL 2297981, at *2 (C.D. Cal. Sept. 27, 2004) (finding Rule 54(b) an appropriate basis for plaintiffs' motion for entry of judgment because the case involved "multiple claims and parties"). As noted by the Third Circuit:

> Rule 54(b) is designed to facilitate the entry of judgments upon one or more but fewer than all the claims or as to one or more but fewer than all the parties in an action involving more than one claim or party. . . . The basic purpose of Rule 54(b) is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available.

*Johnson v. Orr*, 897 F.2d 128, 131 (3d Cir. 1990) (quoting Wright & Miller, Federal Practice and Procedure § 2654 (2d ed. 1983)). Thus, in a case that involves simply one plaintiff and one defendant, a party generally moves for entry of judgment under Rule 54(b) in order to immediately appeal a court's ruling that resolves some, but not all, of the

claims raised. *See Aqua Shield, Inc. v. Inter Pool Cover Team*, 2012 WL 5077576, at *1 (D. Utah Oct. 18, 2012) (noting that Rule 54(b) "envisions" the moving party seeking an entry of final judgment in order to immediately appeal the Court's ruling).

Although VHG has not meaningfully challenged the propriety of Geerlings's Motion under Rule 54, because this case does not involve multiple parties and no longer involves multiple claims, the Court does not see a basis for entertaining Geerlings's Motion under Rule 54. Rather, the Court finds it more appropriate to treat this Motion as one for summary judgment under Rule 56 regarding the measure of damages, and a request for entry of a final judgment in a separate document as required under Rule 58. The Court's prior Order entered partial judgment in favor of Geerlings and thereby recognized the Dutch Appeal Judgment. (Doc. 43.) The Order also dismissed VHG's counterclaim for fraud. (*Id.*) The Order, however, did not enter judgment for a sum certain or otherwise direct VHG to pay a specific amount in damages, as Geerlings's Motion for Partial Summary Judgment concerned only the question of whether the Dutch Appeal Judgment should be recognized. (*See* Doc. 15.) Thus, because the Court's Order did not determine the monetary relief to which Geerlings is entitled, the Order was not a final judgment. Fed. R. Civ. P. 54(a); *see Novella v. Westchester Cty.*, 335 Fed. Appx. 73, 74 (2d Cir. 2009) ("A judgment is not final when the amount of damages and other quantifiable relief is still genuinely in dispute."). Accordingly, the amount of damages stemming from Geerlings's single claim for relief remains an issue outstanding in this case.

But considering that the parties have thoroughly briefed the merits of Geerlings's Motion, and considering that VHG has not meaningfully disputed the procedural propriety of the instant Motion, and further finding that Geerlings is clearly entitled to have its recognized foreign judgment converted into U.S. dollars, the Court concludes that it is appropriate to treat Geerlings's Motion as one for summary judgment on the issue of damages and a concomitant request for a separate order entering final judgment. *See Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp.*, 669 F. Supp. 2d 538, 539-43

5

(E.D. Pa. 2009) (granting partial summary judgment on issue of breach and subsequently ruling on the issue of conversion and interest and entering final judgment); *Indag, S.A. v. Irridelco Corp.*, 658 F. Supp. 763, 764 (S.D.N.Y. 1987) (determining issue of conversion on motion for summary judgment); *see also Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 162-63 (D.D.C. 2013) ("*Continental*"), *aff'd*, 603 Fed. Appx. 1 (D.C. Cir. 2015) (finding plaintiff was entitled to conversion of its foreign award even under the stringent "manifest injustice" standard of Rule 59(e)).

### III. Discussion

Geerlings requests the Court to enter judgment in U.S. dollars using the exchange rate as of the date the Appeal Judgment issued, as well as post-judgment interest and costs. As detailed below, Geerlings's Motion will be granted in part and denied in part.

**A.    The Court Predicts That the Pennsylvania Supreme Court Would Look to the Approach of the Restatement (Third) of Foreign Relations Law**

In order to dispose of Geerlings's Motion, the Court must first decide which rule of law should govern the issue of conversion. "Because determination of the date on which to convert a foreign currency debt into dollars is a substantive question," a federal court sitting in diversity must apply state law. *Competex, S.A. v. Labow*, 783 F.2d 333, 334 (2d Cir. 1986) ("*Competex*"); *see Siematic*, 669 F. Supp. 2d 538, 543 (E.D. Pa. 2009) (applying the Restatement approach); *Nikimiha Sec. Ltd. v. Trend Grp. Ltd.*, 646 F. Supp. 1211, 1227-29 (E.D. Pa. 1986) ("*Nikimiha*") (relying on the Restatement approach). The Pennsylvania Supreme Court has not issued a binding rule governing the method for determining which exchange rate to apply when converting a foreign judgment into U.S. dollars. *See Novozymes A/S v. PHLburg Techs., Inc.*, No. 425 EDA 2013, 2014 WL 10920474, at *9 (Pa. Super. Ct. May 7, 2014). Moreover, the Commonwealth's intermediate courts have not provided much guidance on the issue. *See id.* at *10. However, two federal district courts in the Eastern District of Pennsylvania sitting in diversity have predicted that the Commonwealth's highest court would rely on the approach of the Restatement of Foreign Relations Law (the "Restatement"). *See*

*Siematic*, 669 F. Supp. 2d at 540-43; *Nikimiha*, 646 F. Supp. at 1227-29. In contrast, in the absence of indicia to the contrary, some courts have adopted the more mechanical federal approach, which is based on two older Supreme Court cases. *See Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 322-23 (6th Cir. 2011) (citing *Die Deutsche Bank Filiale Nurnberg v. Humphrey*, 272 U.S. 517 (1926); *Hicks v. Guinness*, 269 U.S. 71 (1925)). Presently, while the parties note the existence of both the Restatement and federal approaches, neither party contends that the Pennsylvania Supreme Court would reject the Restatement approach or otherwise argues that the Restatement approach should not apply. Accordingly, considering the greater flexibility afforded by the Restatement approach as recognized by the district court in *Siematic*, *see* 669 F. Supp. 2d at 543, the Court concurs with the reasoning of its sister court and likewise concludes that the Pennsylvania Supreme Court would look to the Restatement approach in deciding this issue. *See also United States v. Sommerville*, 324 F.2d 712, 723 (3d Cir. 1963) ("Even without express approval by a state court of a Restatement principle, [the Third Circuit] has held the Restatement to be evidence of state law in the absence of direct local authority.") (citation omitted).

The Restatement recognizes that United States courts "ordinarily give judgment on causes of action arising in another state, or denominated in a foreign currency, in United States dollars. . . ." Restatement (Third) of Foreign Relations Law § 823(1). When issuing a judgment arising out of a foreign currency obligation in U.S. dollars, the court should select "a date of conversion such that the exchange rate will 'make the creditor whole and [will] avoid rewarding a debtor who has delayed in carrying out the obligation.'" *Siematic*, 669 F. Supp. 2d at 541 (quoting Restatement § 823(2)) (alteration in original). This rule has been referred to as a creditor's preference rule. *See Nikimiha*, 646 F. Supp. at 1227 (citing *Competex*, 783 F.2d at 357). As the commentary to this section of the Restatement further explains:

> [T]he date used for conversion should depend on whether the currency of obligation has appreciated or depreciated relative to the dollar. In general, if the foreign currency has depreciated since the injury or breach, judgment

> should be given at the rate of exchange applicable on the date of injury or breach; if the foreign currency has appreciated since the injury or breach, judgment should be given at the rate of exchange applicable on the date of judgment or the date of payment.

*Id.* cmt. c. At bottom, the Restatement admonishes courts to "assure that neither party receives a windfall or is penalized as a result of currency conversion." *Id.*

**B.      Geerlings is Entitled to a Judgment Entered in U.S. Dollars**

Conversion of "foreign currency amounts into dollars at judgment is the norm, rather than the exception." *Continental*, 932 F. Supp. 2d at 158 (citing *Elite Entm't, Inc. v. Khela Bros. Entm't Inc.*, 396 F. Supp. 2d 680, 694 (E.D. Va. 2005)); *see ReliaStar Life Ins. Co. v. IOA Re, Inc.*, 303 F.3d 874, 882 (8th Cir. 2002) (noting that the Restatement "suggests that United States courts ordinarily enter judgments in U.S. dollars"); *Siematic*, 643 F. Supp. 2d at 688 (applying the Restatement and entering judgment in U.S. dollars on a debt obligation established in EURO); Restatement § 823(1). In its Complaint, Geerlings expressly requested a conversion of the Appeal Judgment into U.S. dollars. (Compl. p. 7.) Geerlings never represented subsequently that it preferred judgment to be entered in a foreign currency. *See Siematic*, 643 F. Supp. 2d at 688 (applying the Restatement and converting judgment into U.S. dollars upon plaintiff's request); *Continental*, 932 F. Supp. 2d at 158 (citing Restatement § 823 cmt. b) (finding plaintiff entitled to conversion of its foreign award into U.S. dollars even when plaintiff's complaint did not specifically request judgment to be entered in a foreign currency[3]); *see also Continental*, 603 Fed. Appx. 1, 4 (D.C. Cir. 2015) ("[A] judgment in a foreign currency should be issued *only when requested by the judgment creditor*.") (quoting Restatement § 823 cmt. b) (emphasis added). As such, the Court finds no reason to depart from the "norm" of conversion in this case.

As Geerlings is entitled to a judgment entered in U.S. dollars, the Court must further determine which exchange rate to use in converting the Appeal Judgment.

---

[3]      *See Continental*, 850 F. Supp. 2d 277, 283 (D.D.C. 2012) (noting that plaintiff never requested a conversion in its complaint).

Geerlings requests the Court to apply the exchange rate in effect on the date the Appeal Judgment issued: December 24, 2013. (Mot. to Enforce 2.) In support, Geerlings notes that the EURO has depreciated since the date the Appeal Judgment issued, and argues that the Restatement directs courts to use the exchange rate in effect on the date of breach or injury when a recognized foreign judgment denominated in a foreign currency has depreciated in value. (*Id.*; *see* Br. in Supp. 8-9; Reply Br. 3-4.) According to Geerlings, because the date the foreign judgment issued is deemed to be the date of breach for the purposes of a Recognition Act claim, the exchange rate prevailing on this date should apply. (*See* Br. in Supp. 9; Reply Br. 3-4.) VHG makes three central arguments in opposition to Geerlings's position. First, VHG contends that the Appeal Judgment was not enforceable on December 24, 2013 and, consequently, the exchange rate on this date should not govern. (Br. in Opp'n 12-13.) Instead, VHG argues that the earliest date on which it was obligated to pay the Appeal Judgment, and thus the date of breach for purposes of this Recognition Act claim, was the date on which it was served with the Appeal Judgment: April 30, 2015. (*Id.*) Second, VHG contends that the exchange rate in effect on December 24, 2013 should not apply to Dutch statutory interest payments that "came due" after that date. (*Id.* at 13.) Rather, VHG argues that the conversion rates for these payments should be calculated on a "payment-by-payment" basis as of the exchange rate in effect at the time each payment "becomes due." (*Id.*) Separately, VHG contends that if conversion is warranted, the appropriate exchange rate should be the prevailing rate on the date requested by Geerlings in its Complaint: November 21, 2016. (*Id.* at 14-18.)

On a claim for recognition of a foreign judgment, the Restatement admonishes courts to apply the "breach day" rule if the currency in which the foreign judgment is denominated has depreciated in value, "[u]nless the interests of justice require otherwise." *Continental*, 932 F. Supp. 2d at 159 (citing Restatement § 823 cmts. c & d); *see Siematic*, 669 F. Supp. 2d at 541 (quoting Restatement § 823 cmt. c) ("In general, if the foreign currency has depreciated since the injury or breach, judgment should be

9

given at the rate of exchange applicable on the date of injury or breach."). Conversely, if the currency in which the foreign judgment is denominated has appreciated in value, courts should apply the exchange rate prevailing on the date judgment is entered. *See Siematic*, 669 F. Supp. 2d at 543-44 (using the exchange rate prevailing on the date partial judgment was entered, rather than the date of breach, because the EURO had appreciated relative to the dollar since the date of breach); *Nikimiha*, 646 F. Supp. at 1229 (applying the Restatement approach and using the exchange range in effect on the date of judgment because the foreign currency had appreciated since the date of breach). Under the breach day rule, "the applicable exchange rate is the one that was in effect on the date that the defendant breached its obligations to the plaintiff." *Continental*, 932 F. Supp. 2d at 159 (citing *ReliaStar Life Ins. Co.*, 303 F.3d at 883). In an action for recognition of a foreign judgment, generally the date of breach "for purposes of converting the foreign judgment into United States dollars is the date on which the foreign judgment was entered." *Dynamic Cassette Int'l Ltd. v. Mike Lopez & Assocs., Inc.*, 923 F. Supp. 8, 12 (E.D.N.Y. 1996); *see Competex*, 783 F.2d at 335 (noting that the date of breach for purposes of recognition and enforcement of a foreign judgment is the "conversion rate prevailing on the date the [foreign] judgment debt became due").

Here, in order to determine which exchange rate to apply, the Court must determine on what date the Appeal Judgment debt became due. *See Indag, S.A.*, 658 F. Supp. at 766 (citing *Competex*, 783 F.2d at 335). The parties agree that the Appeal Judgment was issued on December 24, 2013. The exchange rate in place on December 24, 2013 was EURO to $ 1.3676. (Ex. 1, Doc. 45-1.)

Turning to VHG's arguments opposing the use of the exchange rate in place on December 24, 2013 for purposes of the breach day rule, the Court dispenses first with the contention that the appropriate exchange rate should be the rate in effect on November 21, 2016, because that is the date of conversion requested by Geerlings in its Complaint. The Wherefore Clause in the Complaint reads, in pertinent part, "[Geerlings] respectfully requests this Honorable Court to enter judgment in its favor, and against

[VHG] in the amount equal to 621,068.87 EURO *as converted to U.S. dollars on the date judgment is entered*. . . ." (Compl. p. 7) (emphasis added). VHG contends that this language constitutes a specific request for the Court to apply the exchange rate in effect on the date it ruled on Geerlings's Motion for Partial Summary Judgment. However, as noted by Geerlings, requesting the Court to convert a foreign judgment into U.S. dollars on the date judgment is entered is not the same as requesting the Court to convert a foreign judgment into U.S. dollars using the exchange rate prevailing on the date judgment is entered. (Reply Br. 8.) Indeed, the Court does not read Geerlings's Wherefore Clause as a specific request to have its foreign judgment converted into U.S. dollars using the exchange rate in effect on the date the Court ruled on Geerlings's prior Motion. Regardless, Rule 54(c) of the Federal Rules of Civil Procedure provides that a final judgment generally "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." As the Third Circuit has explained, "[a]s long as [a] plaintiff[] ha[s] stated a claim for relief, it is the court's obligation to grant the relief to which the prevailing party is entitled whether it has been specifically demanded or not." *USX Corp. v. Barnhart*, 395 F.3d 161, 165 (3d Cir. 2004) (quoting *Kirby v. United States Gov't*, 745 F.2d 204, 207 (3d Cir. 1984) (emphasis omitted)). Therefore, because the Court finds that Geerlings is entitled to a conversion of its foreign judgment into U.S. dollars pursuant to the Restatement approach, the Wherefore Clause, however interpreted, does not limit the Court's authority to prescribe the relief justified by Geerlings's Recognition Act claim. *See Continental*, 603 Fed. Appx. at 4-5.

Next, VHG argues that it was under no obligation to make payment to Geerlings until VHG was served with the Appeal Judgment, and, consequently, the applicable exchange rate should be the one in effect on the date that its payment obligation first arose. The parties agree that the Appeal Judgment states: "The Court of Appeal . . . condemns [VHG] to pay to Geerlings *within fourteen days after service of this judgment* to pay EUR 459,641.18 to be increased with the statutory interest of this amount as from 1 January 2008 until the day of final settlement." (Doc. 1-3, at 9) (errors in original)

(emphasis added). In support of its prior Motion, Geerlings presented undisputed evidence that the Appeal Judgment was served upon VHG in accordance with Dutch law on April 30, 2015, approximately sixteen months after the Appeal Judgment issued. (Nabben Expert Decl. ¶ 17; Nabben Decl. ¶ 20, Doc. 15-1.) Now, relying on this evidence, VHG argues that the Appeal Judgment was not enforceable against it until April 30, 2015, when the conversion rate was EURO to $1.1162. (Br. in Opp'n 13.) The Court agrees with VHG's position, and will consider the exchange rate prevailing on April 30, 2015 (EURO to $1.1162[4]) to be the breach day exchange rate for the purposes of Geerlings's claim.

As previously noted, courts applying the breach day rule in the context of a claim for recognition or enforcement of a foreign judgment generally have found that the date of breach is the date on which the foreign judgment was entered. *See Competex*, 783 F.2d at 334-35; *Dynamic Cassette Int'l Ltd.*, 923 F. Supp. at 12; *Indag, S.A.*, 658 F. Supp. at 765-66. However, the principle underlying this theory is that the foreign judgment debt becomes due to the judgment creditor when the foreign judgment issues, which gives rise to a cognizable claim under American law against the judgment debtor. *See Competex*, 783 F.2d at 335 (noting that if the foreign judgment is entitled to enforcement, a court applying the breach day rule would enter judgment using "the conversion rate prevailing on the date the [foreign] judgment debt became due"); *Vishipco Line v. Chase Manhattan Bank, N.A.*, 660 F.2d 854, 866 n.7 (2d Cir. 1981) (noting the theory behind the breach day rule is that it "giv[es] the plaintiff the value in U.S. dollars of the foreign currency as of the date when [plaintiff] should have been paid"); *Asphalt Trader Ltd. v. Taryn Capital Energy, L.L.C.*, 2016 WL 7017261, at *2 (D. Utah Dec. 1, 2016) (applying breach day rule and calculating conversion using the exchange rate in effect on the day the foreign award issued because defendant's payment obligation arose at that time); Restatement § 823

---

[4]     *See* Board of Governors of the Federal Reserve, Foreign Exchange Rates - H.10
        Weekly, Release Date: May 4, 2015,
        https://www.federalreserve.gov/releases/h10/20150504/

cmt. d ("When the breach date is applied for conversion of foreign obligations . . . an obligation to pay a sum of money is convertible as of the date it was payable."). Stated differently, the "breach" occurs when the judgment debtor has incurred a payment obligation that is presently due, pursuant to a foreign judgment that is final, conclusive, and enforceable where rendered. *See Competex*, 783 F.2d at 335; *Asphalt Trader Ltd.*, 2016 WL 7017261, at *2 ("[T]he 'breach day' rule applies, and the court will calculate the conversion using the exchange rate as it stood on the day [petitioner's] obligation to pay costs and fees [in British pounds] to [respondent] arose[.]"); *Indag, S.A.*, 658 F. Supp. at 767 (discussing the need to determine the date on which the foreign judgment debt "became due" in order to convert the foreign judgment pursuant to the breach day rule).

These considerations counsel against finding the exchange rate in place on December 24, 2013 to be the breach day exchange rate. By its own undisputed terms, the Appeal Judgment required VHG to pay Geerlings "within fourteen days *after service of this judgment*. . . ." (Doc. 1-3, at 9) (emphasis added).Geerlings submitted undisputed evidence that the Appeal Judgment was served upon VHG under Dutch law on April 30, 2015, roughly sixteen months after the Appeal Judgment issued. (Nabben Expert Decl. ¶ 17; Nabben Decl. ¶ 20.) Considering that the Appeal Judgment expressly directed VHG to pay Geerlings within fourteen days after service of the Appeal Judgment, and considering that the only evidence of Dutch law on service indicates that VHG was not served with the Appeal Judgment until April 30, 2015, the Court concludes that the foreign judgment debt did not "bec[o]me due" under Dutch law until this time. Consequently, the Court will consider the breach day exchange rate to be the rate prevailing on April 30, 2015, as that is the date upon which the foreign judgment obligation first became due per the terms of the Appeal Judgment. *See Competex*, 783 F.2d at 335.

In so doing, the Court must reject Geerlings's contention that the Appeal Judgment was in fact served upon VHG on December 24, 2013. Based on VHG's prior concession, the Court found that the Dutch Court of Appeal "transmitted" its judgment to VHG's

attorney "on or about" December 24, 2013. (Memorandum 4, Doc. 42.) Geerlings argues that because VHG has not provided any proof of Dutch law on service, this forum's law governs the issue. *See Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 216 (3d Cir. 2006) ("The parties, therefore, carry the burden of proving foreign law; where they do not do so, we 'will ordinarily apply the forum's law.'") (quoting *Bel–Ray v. Chemrite Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999)). Federal Rule of Civil Procedure 77(d) governs the service of notice of an order or judgment, and provides that "[i]mmediately after entering an order or judgment, the clerk must serve notice of the entry, as provided in Rule 5(b), on each party who is not in default for failing to appear." Under Rule 5(b), service may be effectuated by "mailing it to the person's last known address–in which event service is complete upon mailing." Fed. R. Civ. P. 5(b)(2)(C).[5] Geerlings now contends that the "transmission" constituted service under Rule 5(b), and cites to two cases which rely on the service-by-mail method prescribed in Rule 5(b)(2)(C). (Reply Br. 6 n.9.)

Here, however, the record contains evidence of Dutch law on service–a declaration from Geerlings's own expert on Dutch law, who attests that "[t]he Appeal Judgment was served on [VHG] under Dutch law on April 30, 2015. . . ." (Nabben Expert Decl. ¶ 17.) Thus, according to Geerlings's own expert, the Appeal Judgment was served under Dutch law on that date. The only reasonable implication is that the foreign judgment had not been served in accordance with Dutch law prior to that moment. Indeed, if this earlier "transmission" in fact constituted service under Dutch law, Geerlings had the burden to supply proof establishing that point, but it did not. *See Pirito v. Penn Eng'g World Holdings*, 947 F. Supp. 2d 489, 497 (E.D. Pa. 2013) (quoting *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999)). Separately, even if this forum's rules on service governed the issue, Geerlings still fails to establish that service occurred in accordance with the Federal Rules on December 24, 2013. The fact that the

---

[5]     Because VHG was represented by counsel, Rule 5(b)(1) requires service to be made on its attorney.

Appeal Judgment was "transmitted" to counsel for VHG on or around December 24, 2013, without more, does not establish that service was satisfied on that date under Rules 5(b) and 77(d). *See In re City of Phila. Litig.*, 123 F.R.D. 515, 519 (E.D. Pa. 1988) ("[A]ctual notice is not a substitute for proper service."). Geerlings presented the Court with no evidence establishing that VHG was mailed the Appeal Judgment on December 24, 2013, as its citations imply, and the Court is left to guess what form this "transmission" took. *See Kilinc v. Tracfone Wireless Inc.*, 757 F. Supp. 2d 535, 538 (W.D. Pa. 2010) ("If the validity of service is challenged, the party claiming valid service . . . bears the burden of proof.") (citation omitted).

Accordingly, by its own terms, the Appeal Judgment did not require VHG to pay Geerlings the amount due until after that Judgment was served upon VHG. Geerlings's own expert attests that the Appeal Judgment was served upon VHG in accordance with Dutch law on April 30, 2015. Geerlings offers no other evidence of service under Dutch law. Even if this forum's service rules governed the issue, Geerlings has not provided any evidence that the "transmission" of the Appeal Judgment on December 24, 2013 satisfied any method of service prescribed by the Federal Rules. Therefore, based on the record presented, the Court finds that VHG's payment obligation first "became due" on April 30, 2015. As such, the Court will deem the exchange rate prevailing on April 30, 2015 to be the breach day exchange rate. The Court further finds that considering the exchange rate prevailing on this date to be the breach day exchange rate will ensure that Geerlings does not obtain a "windfall" by benefitting from an exchange rate in effect approximately sixteen months before the Appeal Judgment was served upon VHG and, consequently, before VHG's payment obligation arose. *See Siematic*, 669 F. Supp. 2d at 543. Because the exchange rate prevailing on April 30, 2015 (EURO to $1.1162) is less advantageous to Geerlings than the judgment day exchange rate (EURO to $1.1170[6]), the Court will

---

[6] Wall Street Journal Market Data Center, Exchange Rates: New York Closing Snapshot (Wednesday, June 21, 2017), http://online.wsj.com/mdc/public/page/2_3021-forex.html.

apply the latter rate in converting the Appeal Judgment into U.S. dollars.

Lastly, the Court rejects VHG's argument that a different exchange rate should apply to the statutory interest that has accrued pursuant to Dutch law. In dismissing this argument and reaching its ultimate conclusion, the Court finds the damages formula adopted by the district court in *Siematic* a helpful guide. In *Siematic*, the district court applied the Restatement approach to currency conversion and used the exchange rate in effect on the date partial summary judgment was entered, rather than the date of breach, because the foreign currency had appreciated. *See* 669 F. Supp. 2d at 540, 544. The *Siematic* court adopted the following formula for part of its damages calculation:

> Converted U.S. dollar amount = [(principal debt owed to plaintiff in EURO) + (interest accumulated on principal debt owed in EURO based on interest rate specified in agreement)] x (exchange rate selected by the court)

*Id.* Although the underlying context differed in *Siematic*, the Court finds this formula useful here. Adapting and adjusting that formula to this case, the converted U.S. dollar amount owed to Geerlings would be:

> [(475,976.18 EURO in debt owed, including fees awarded) + (162,510.87 EURO in statutory interest from January 1, 2008 through December 6, 2016, as agreed upon by the parties[7]) + (166.90 EURO in statutory interest from December 7, 2016 through December 12, 2016,[8] the date on which VHG wired payment to Geerlings[9]) x (1.1170 exchange rate in effect on the

---

[7]    (*See* Supp. Nabben Expert Decl. ¶ 5; Second Van Hoekelen Decl. ¶¶ 6-7, Doc. 50-2 (concurring with Geerlings calculation that the amount of statutory interest from November 22 through December 11, 2016 is 33.38 EURO per day).) To note, the Second Van Hoekelen Declaration miscalculates the number of days between November 22 and December 11, 2016. There are twenty (20) days in that time period, including the end date. Thus, at a rate of 33.38 EURO per day, the interest accrued from November 22, 2016 up to and including December 11, 2016 is 667.60 EURO, not 634.22 EURO. (*See* Second Van Hoekelen Decl. ¶ 6.)

[8]    (*See* Supp. Nabben Expert Decl. ¶ 6 (33.38 EURO multiplied by 5 days).)

[9]    The Appeal Judgment directed VHG to pay statutory interest on the judgment amount pursuant to Dutch law "until the day of final settlement." (Doc. 1-3, at 9.) VHG has provided an unrebutted Declaration of a Dutch attorney who attests that VHG's wire transfer on December 12, 2016 constitutes satisfaction of a judgment

16

date of judgment)

The *Siematic* court combined the principal debt owed on the contract with the interest accrued on that principal, and converted this aggregated sum by the exchange rate dictated by the creditor's preference rule and the equitable considerations embodied in the Restatement. *See id.* The court did not apply different exchange rates to the interest accrued. *See id.*; *see also Nikimiha*, 646 F. Supp. at 1229 (applying same exchange rate to both the underlying damages and the interest accumulated on those damages pursuant to English law).

The one case cited by VHG in support of its position proves unconvincing. In *Novozymes A/S v. PHLburg Technologies, Inc.*, No. 425 EDA 2013, 2014 WL 10920474 (Pa. Super. Ct. May 7, 2014) ("*Novozymes*"), the Pennsylvania Superior Court affirmed a trial court's damages calculation, which applied to each missed payment under a contract the exchange rate that was contemporaneous with that payment. *Id.* at *2, *9. On appeal, the Superior Court expressly abstained from addressing the method of conversion used by the trial court, deeming the issue to have been waived. *See id.* at *10. The contract breached in *Novozymes* required

---

under Dutch law. (Kos Decl. ¶¶ 3-4, Doc. 50-3.) Geerlings's own expert on Dutch law has explained that statutory interest continued to accrue on the Appeal Judgment "until the Appeal Judgment is satisfied." (Nabben Expert Decl. ¶ 13.) And Geerlings acknowledges in its brief that this wire transfer equaled the EURO due on the Appeal Judgment as of the date sent. (Reply Br. 1.) Accordingly, based on the record, the Court finds that VHG's obligation to pay statutory interest pursuant to Dutch law was extinguished by virtue of the wire transfer. As such, the Court sees no basis to permit Geerlings to continue accruing Dutch statutory interest on a Dutch judgment which, by the judgment's own terms, requires statutory interest to accumulate only "until the day of final settlement," when that judgment has been satisfied under Dutch law. (Kos Decl. ¶¶ 3-4; Nabben Expert Decl. ¶ 13.) Of course, this does not mean that the wire payment satisfied Geerlings's Recognition Act claim, which is a creature of American law. *See Competex*, 783 F.2d at 340 (noting that a court's recognition of a foreign judgment creates "a new obligation in dollars"); *Continental*, 932 F. Supp. 2d at 161.

17

the breaching party to remit monthly payments to the non-breaching party. *Id.* at *9. As such, the trial judge elected to apply the exchange rate in effect as of the date of each alleged breach, that is, the time each payment became due under the contract, rather than applying the exchange rate prevailing on the date judgment was entered to the entire outstanding balance. *See id.*

Unlike installment payments due on particular dates under a contract, the statutory interest accruing on the Appeal Judgment was not due in the form of separate payments on specific dates. The statutory interest is designed to compensate Geerlings for the loss of its use of the money owed to it during the period between the issuance of the Appeal Judgment and satisfaction of that judgment. (*See* Nabben Expert Decl. ¶ 8.) This interest accrued continuously from the date specified in the Appeal Judgment (January 1, 2008) until the time the Appeal Judgment was satisfied under Dutch law. (*Id.* ¶¶ 8, 13.) This differs markedly from the situation in *Novozymes*, in which the trial court concluded that the contract was breached each time an installment payment was missed and applied the exchange rate prevailing on the date each breach occurred in converting the damages. *Novozymes*, 2014 WL 10920474, at *9. As such, the Court is not persuaded by the Superior Court's decision in *Novozymes* that the statutory interest payments owed by VHG should be calculated on a "payment-by-payment" basis based on the exchange rate in place at the time each interest payment supposedly "became due," as VHG advances.

## C.    VHG's Wire Payment Does Not Moot Geerlings's Motion

Finally, the Court rejects VHG's contention that its December 12, 2016 wire transfer makes Geerlings's present Motion moot. Intervening circumstances can cause a case to become moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Campbell-Ewald Co. v. Gomez*, ____ U.S. ____, 136 S. Ct. 663, 669 (2016) (quoting *Knox v. Serv. Emps.*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted)). "As long as the parties have a concrete interest, however

18

small, in the outcome of the litigation, the case is not moot." *Id.* (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation and internal quotation marks omitted))

First, the Court reiterates that its prior Order did not enter judgment in EURO or, for that matter, any sum certain. Thus, VHG's contention that its wire transfer satisfied this Court's "judgment" misses the mark.

Additionally, a similar attempt was made by a judgment debtor in *Competex*, which was rejected by the Second Circuit. In that case, the district court had recognized the foreign judgment and entered judgment in U.S. dollars, using the exchange rate in effect at the time the foreign judgment debt became due pursuant to the breach day rule. *See Competex*, 783 F.2d at 334-35. Subsequently, the judgment debtor sought to satisfy the American judgment by paying the underlying foreign judgment in the depreciated foreign currency. *See id.* at 335. The Second Circuit affirmed the trial court's ruling rejecting this attempt. *Id.* at 339. In so doing, the court explained that use of the breach day conversion rule, as was then required under New York law, "clearly implies" that the New York judgment must be satisfied by payment of the dollar amount due. *Id.* The *Competex* court noted that "[i]t would be anomalous to . . . allow [New York's] creditor's preference rule to be undercut by giving the judgment debtor the opportunity to satisfy his New York judgment by paying the underlying judgment in depreciated pounds." *Id.* The Court concurs with the reasoning of the *Competex* court. Although in the present case the Court has yet to enter final judgment in U.S. dollars, upon granting Geerlings's Motion for Partial Summary Judgment a new obligation was created under Pennsylvania law. VHG's wire transfer denominated in a depreciated foreign currency did not satisfy this new obligation in full. Accordingly, Geerlings is entitled to pursue the remaining amount owed to it by virtue of its successful Recognition Act claim. This Motion, therefore, is not moot.

**D.    Damages**

In light of the above, the Court finds that Geerlings is entitled to $713,376.46.[10] However, due to VHG's December 12, 2016 wire payment in the amount of 638,620.64 EURO (Second Van Hoekelen Decl. ¶ 9; Reply Br. 1), the Court will offset the final judgment by this payment as converted into U.S. dollars on the date the payment was made. *See Competex*, 783 F.2d at 335 (using date of payment for purpose of a similar conversion). The exchange rate prevailing on December 12, 2016 was EURO to $1.0606. (*See* Doc. 55-1.) Thus, VHG's wire payment equates to $677,321.05.[11] Accordingly, the difference owed to Geerlings is $36,055.41. Judgment will be entered in this amount, per Geerlings's request. (*See* Reply Br. 14.) Geerlings is also entitled to post-judgment interest pursuant to 28 U.S.C. § 1961 from the date final judgment is entered. *See Siematic*, 669 F. Supp. 2d at 544-45. The Court will also grant Geerlings's request for those costs allowable under 28 U.S.C. § 1920, *see Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 163 (3d Cir. 2012); *Alzheimer's Inst. of Am., Inc. v. Avid Radiopharm.*, 2016 WL 1161349, at *1 (E.D. Pa. Mar. 23, 2016); Fed. R. Civ. P. 54(d)(1), considering that VHG has not meaningfully contested this request.

Lastly, after VHG made its wire transfer, Geerlings requested $11.29 each day from December 12, 2016 until the date the Court enters final judgment. (Reply Br. 14.) Geerlings's calculation appears to be based on the assumption that the Dutch statutory

---

[10]    Total = [(475,976.18 EURO in debt owed for breach of contract, plus fees) + (162,510.87 EURO in statutory interest from January 1, 2008 through December 6, 2016, as agreed upon by the parties) + (166.90 EURO in statutory interest from December 7, 2016 up to December 12, 2016, the date on which VHG wired payment to Geerlings] x (1.1170 exchange rate in effect on the date of judgment)

[11]    Geerlings claims that converting VHG's wire payment using the EURO to $1.0606 exchange rate prevailing on December 12, 2016 would come out to $667,326.03. (*See* Reply Br. 1, 14.) Geerlings does not show how it reached this figure. Whether or not this figure was in error, the Court finds it appropriate to simply multiply the amount of the wire transfer (638,620.64 EURO) by the exchange rate prevailing on the date the payment was made (1.0606), which comes out to $677,321.05.

interest continues to accrue. (*Compare* Reply Br. 14, *with* Supp. Nabben Expert Decl. ¶ 6.) However, as noted above, the Court finds that Geerlings's entitlement to the continued accrual of interest pursuant to Dutch law extinguished upon VHG's wire payment.[12] Accordingly, the Court sees no basis for permitting Dutch statutory interest to continue to run after the wire transfer satisfied the Appeal Judgment under Dutch law, and therefore will deny Geerlings's request.

## IV. Conclusion

For the above stated reasons, Plaintiff's Motion will be granted in part and denied in part as detailed above and in the accompanying Order.


An appropriate order follows.



June 21, 2017                                    /s/ A. Richard Caputo
Date                                             A. Richard Caputo
                                                 United States District Judge

---

[12]        *See supra* note 9.